IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHELLE LIEB, ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 22-3251 |
| ) | |
| SHARKNINJA OPERATING, LLC, ) | |
|     Defendant. ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

### NATURE OF THE CASE

1. This is a products liability and negligence suit based on the explosion of—and resulting severe burn injuries from—a Ninja pressure cooker that, due to its defective condition, was prone to burst and spew its scalding contents. This suit is also based on misstatements and omissions that SharkNinja Operating, LLC (SharkNinja) makes about the safety of its pressure cookers.

2. Defendant SharkNinja designs, manufactures, markets, imports, distributes, and sells a wide range of consumer kitchen products, including the subject Ninja pressure cooker.

3. SharkNinja advertises the "safety" of its pressure cookers and states that they cannot be opened while in use. Despite Defendant's claims of "safety," it made and sold pressure cookers that suffer from serious and dangerous defects.

4. During ordinary and routine operation, the Ninja generates extreme heat and steam. When the defect manifests itself, the built-up pressure and steam trapped inside the Ninja cause its scalding hot contents to burst and erupt from the appliance when the lid is opened by the consumer, resulting in significant and painful burn injuries.

5. SharkNinja knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell these devices to consumers, failing to warn consumers

of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Michelle Lieb and others like her.

## PLAINTIFF MICHELLE LIEB

6. Plaintiff Michelle Lieb is a resident and citizen of Buffalo County, Nebraska.

7. Ms. Lieb purchased a new Ninja electric pressure cooker, model OP300, from her local Walmart store in Kearney, Nebraska (the "Ninja Cooker").

8. On or about August 15, 2022, Ms. Lieb was cooking with the Ninja Cooker under normal operating conditions as directed by the manufacturer.

9. Unbeknownst to Ms. Lieb, as a result of the defects, the Ninja Cooker still retained a dangerous amount of pressure inside. Despite ShankNinja's purported built-in safety features, Ms. Lieb was able to easily remove the lid. When she did so, the Ninja Cooker's hot contents exploded out of the pot, scalding and scarring her abdomen, arm, and wrist.

10. The ability to easily open the lid when significant pressure remained, and the presence of all signs indicating the internal pressure had been eliminated, is a dangerous defect in the Ninja Cooker and one that is contrary to Defendant's representations.

11. The explosion occurred because of the failure of the Ninja Cooker's supposed "safety mechanisms," which purport to keep the consumer safe while using the Ninja Cooker. In addition, the incident occurred as the result of ShankNinja's failure to redesign the Ninja Cooker, despite the existence of economical, safer alternative designs.

12. The Ninja Cooker's failure and the resulting injuries occurred at Ms. Lieb's home in Gibbon, Buffalo County, Nebraska.

13. As a direct and proximate result of ShankNinja's conduct, Ms. Lieb incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## DEFENDANT SHARKNINJA OPERATING, LLC

14. SharkNinja designs, manufactures, markets, imports, distributes, and sells a variety of consumer kitchen products including pressure cookers, air fryers, and blenders.

15. SharkNinja is a limited liability company organized under the laws of Delaware.

16. SharkNinja has its headquarters and principal place of business at 89 A St. # 100, Needham, MA 02494.

17. SharkNinja does business in Nebraska, including by selling its Ninja Cooker line of products to distributors and retailers in Nebraska.

18. SharkNinja sells its Ninja Cooker line of products to Walmart, knowing that those products will be sold at Walmart locations in Nebraska.

## JURISDICTION AND VENUE

19. Plaintiff is a citizen of Nebraska, and Defendant is a citizen of Delaware.

20. This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

21. SharkNinja has sufficient minimum contacts with Nebraska and has intentionally availed itself of the markets within Nebraska through the promotion, sale, marketing, and distribution of its products.

22. Venue is proper in this Court under U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to this claim occurred in Buffalo County, Nebraska.

## FACTUAL BACKGROUND

23. SharkNinja is in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling Ninja Cooker pressure cookers.

24. Because of the production of high heat and pressure, pressure cookers can cause serious injuries, including burns, if they or any of their components (such as seals, gaskets, controls, and valves, etc.) are defectively designed, manufactured or assembled.

25. Pressure cookers can be extremely dangerous, and one of the biggest dangers is that they can explode or burst open.

26. Defendant warrants, markets, advertises and sells its cookers as a means to cook "easy" and "convenient" allowing consumers to "cook 70% faster than traditional cooking method[s]."

27. In YouTube videos published by SharkNinja, SharkNinja claims that "once your unit has reached a high enough level of pressure, the lid will lock for your safety, and you will not be able to unlock it until the pressure has been released."

28. The owner's manual for the Ninja Cooker states the cooker is equipped with a "safety feature" that prevents the lid from unlocking until "the unit is completely depressurized."

29. Ms. Lieb purchased the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

30. Ms. Lieb used her pressure cooker for its intended purpose of preparing meals and did so in a manner that was reasonable and foreseeable by SharkNinja.

31. However, the Ninja Cooker was defectively and negligently designed and manufactured by SharkNinja in that it failed to properly function as to prevent the lid from being

removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product.

32. The Ninja Cooker was defective in that certain of its components do not operate as designed, its design does not include appropriate safety features and safeguards, and instructions and/or warnings accompanying it were not adequate.

33. The defects include, without limitation, a faulty release valve that inaccurately indicates when the built-up pressure has safely escaped the Ninja Cooker. The defects are also related to a faulty gasket that allows the lid to open despite the presence of dangerous built-up pressure.

34. The defects are also related to the lack of an adequate mechanism to ensure the alleged "built-in" pressure relief and safety features work under real-world operating conditions.

35. The defects, which allows users to open the Ninja Cooker while it still contains dangerous pressure, demonstrates the ineffectiveness of the devices that SharkNinja tout as built-in safety features of the Ninja Cooker.

36. Economic, safer alternative designs were available that could have prevented the Ninja Cooker's lid from being opened while pressurized.

37. SharkNinja knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Ms. Lieb and the public.

38. Ms. Lieb's experience with the Ninja Cooker was not isolated. Other consumers have reported similar horrific experiences and burn injuries as Ms. Lieb.

39. As a direct and proximate result of these defects, Ms. Lieb suffered significant and painful bodily injuries upon her simple removal of the lid of the Ninja Cooker.

40. Consequently, Ms. Lieb seeks damages resulting from the use and explosion of the Ninja Cooker, which has caused Ms. Lieb to suffer from serious bodily injuries, medical expenses, lost wages, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CAUSES OF ACTION

### COUNT I
### STRICT PRODUCTS LIABILITY

41. Plaintiff incorporates by reference each and all of the allegations contained in the preceding paragraphs as though fully set forth herein.

42. The Ninja Cooker that Plaintiff was using was designed, manufactured, marketed and sold by SharkNinja.

43. SharkNinja is in the business of designing, manufacturing, marketing, and selling Ninja Cooker pressure cookers.

44. The Ninja Cooker was unreasonably and dangerously defective in its design, manufacture, and marketing.

45. The Ninja Cooker's safety systems were defectively designed and manufactured, and such defects rendered the Ninja Cooker unreasonably dangerous beyond that which would be contemplated by the ordinary user or consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

46. The Ninja Cooker was in the same or substantially similar condition as when it left the possession of SharkNinja.

47. There were safer alternative designs for the Ninja Cooker other than those which caused Plaintiff's injuries and damages as set forth herein. The safer alternative designs would have either prevented or significantly reduced the risk of serious and catastrophic injury without

substantially impairing the Ninja Cooker's utility, and the safer alternative designs were economically and technologically feasible at all times relevant.

48. The Ninja Cooker was defective as marketed in that SharkNinja failed to adequately warn of the dangerous conditions of the Ninja Cooker as described more fully herein.

49. An ordinary consumer or user with knowledge common to the community and to those who were foreseeably expected to use the Ninja Cooker would not have contemplated that it would contain such a dangerous defect.

50. The design of the Ninja Cooker was defective and unreasonably dangerous in at least the following, non-exclusive ways:

   a. During ordinary and routine operation, the Ninja Cooker generates extreme heat and steam, and built-up pressure and steam trapped inside the Ninja Cooker cause its scalding hot contents to burst and erupt from the appliance when the lid is opened by the consumer, resulting in significant and painful burn injuries;

   b. The Ninja Cooker failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product;

   c. Certain of its components do not operate as designed, its design does not include appropriate safety features and safeguards, and instructions and/or warnings accompanying it were not adequate;

   d. A faulty release valve inaccurately indicates when the built-up pressure has safely escaped the Ninja Cooker;

   e. A faulty gasket allows the lid to open despite the presence of dangerous built-up pressure;

   f. There is no adequate mechanism to ensure the alleged "built-in" pressure relief and safety features work under real-world operating conditions;

   g. The Ninja Cooker was improperly and inadequately tested by Defendant; and

   h. The Ninja Cooker was not safe for use during ordinary, foreseeable operation.

51. SharkNinja knew or should have known of a potential risk of harm presented by the defective design of the supplemental restraint system, but marketed the product with the design and marketing defects. The Ninja Cooker posed an unreasonable risk of harm for the foreseeable use. SharkNinja knew or should have reasonably foreseen the risk of harm at the time the product was sold and that the product possessed a marketing defect.

52. The Ninja Cooker was and inadequately tested by SharkNinja for safety.

53. Plaintiff further claims, in the alternative, that a manufacturing defect was a producing cause of her personal injuries. As further support for Plaintiff's manufacturing defect claims, Plaintiff provides notice of intention to rely upon the Malfunction Doctrine as set forth in RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY § 3 (1998).

54. In this instance, it may be inferred that the severe injuries sustained by Plaintiff were caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, because the injuries suffered by Plaintiff: (a) were of the kind that ordinarily occur as a result of a product defect; and (b) were not, in the particular case, solely the result of causes other than the product defect existing at the time of the sale or distribution. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 3 (1998).

55. SharkNinja's defective and/or negligent design, testing, manufacturing, and marketing of the Ninja Cooker were a proximate and producing cause of Plaintiff's injuries and damages, thus rendering SharkNinja strictly liable.

56. Plaintiff further seeks punitive damages because the injury is attributable to conduct that reflects a reckless disregard for the public safety. Specifically, 1) SharkNinja was aware of the defect and the likelihood that the injury would result from it; 2) SharkNinja could either remedy

the defect or prevent the injury caused by it; and 3) notwithstanding the above, SharkNinja deliberately failed to take action to remedy the defect or prevent the injury.

## COUNT II
## NEGLIGENCE

57. Plaintiff incorporates by reference each and all of the allegations contained in the preceding paragraphs as though fully set forth herein.

58. SharkNinja has a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers.

59. SharkNinja failed to exercise reasonable care in designing, developing, manufacturing, inspecting, testing, selling, distributing, labeling, marketing, and promoting its pressure cookers, which were defective and presented an unreasonable risk of harm to consumers.

60. The negligence of SharkNinja, including its employees, managers and executives in the course and scope of their employment includes, but is not limited to, the following acts and/or omissions regarding the Ninja Cooker:

    a. Failing to use due care in designing and manufacturing the Ninja Cooker to avoid the aforementioned risks to individuals;

    b. Placing an unsafe product into the stream of commerce;

    c. Failing to warn consumers of the dangerous condition of the Ninja Cooker as described more fully herein;

    d. Failing to provide the users with a safety system that is adequate to provide protection and injury prevention during ordinary and foreseeable use;

    e. Failing to properly and adequately perform tests to assess the performance and effectiveness of the Ninja Cooker's alleged safety features;

    f. Choosing to disregard and ignore generally accepted principles of hazard control ("design, guard and warn") as well as its obligation to hold the safety of the public paramount; and

  g.  Failing to complete reasonable investigations and adequate corrective actions after receiving reports of numerous similar incidents and burn injuries;

  h.  Being otherwise careless or negligent.

  61.  Plaintiff suffered and continues to suffer injuries and damages because of SharkNinja' negligent acts and omissions.

  62.  Each of the above negligent acts and omissions of SharkNinja, whether taken singularly or in combination, were a direct, proximate, and producing cause of the injuries to Plaintiff and Plaintiff's damages. Due to SharkNinja's wrongful acts, carelessness, unskillfulness, and negligence SharkNinja should be held liable for Plaintiff's injuries and damages.

  63.  The conduct of SharkNinja was in reckless disregard of Plaintiff's rights because SharkNinja was either aware, or did not care, that there was a substantial and unnecessary risk that its conduct would cause serious injury to others. SharkNinja's conduct was unreasonable under the circumstances, and there was a high probability that the conduct would cause serious harm to another person. As such, Plaintiff further seeks punitive damages.

  64.  SharkNinja is vicariously liable for the negligent acts and omissions, jointly and severally, by and through its agents, servants, and/or employees, acting in the course and scope of their respective employment, individually and/or collectively.

## COUNT III
## BREACH OF EXPRESS WARRANTY

  65.  Plaintiff incorporates by reference each and all of the allegations contained in the preceding paragraphs as though fully set forth herein.

  66.  SharkNinja expressly warranted that its pressure cookers were safe and effective to members of the consuming public, including Plaintiff. Moreover, SharkNinja expressly warranted that the lid of the Ninja Cooker could not be removed while the unit remained pressurized. For

example, SharkNinja warranted that the pressure cookers are equipped with a "safety feature" that prevents the lid from unlocking until "the unit is completely depressurized."

67. Members of the consuming public, including consumers such as the Plaintiff were the intended third-party beneficiaries of the warranty.

68. SharkNinja marketed, promoted and sold its pressure cookers as a safe product, complete with "safety feature[s]."

69. SharkNinja's pressure cookers do not conform to these express representations because the lid can be removed using normal force while the units remain pressurized, despite the appearance that the pressure has been released, making the pressure cookers not safe for use by consumers.

70. SharkNinja breached its express warranties

71. Plaintiff purchased and used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

72. Plaintiff's injuries were the direct and proximate result of SharkNinja's breach of express warranties.

## COUNT IV
## BREACH OF IMPLIED WARRANTY
## OF FITNESS FOR A PARTICULAR PURPOSE

73. Plaintiff incorporates by reference each and all of the allegations contained in the preceding paragraphs as though fully set forth herein.

74. SharkNinja manufactured, supplied, and sold its pressure cookers with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently and safely.

75. Members of the consuming public, including consumers such as the Plaintiff, were the intended beneficiaries of the warranty.

76. SharkNinja's pressure cookers were not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with their use.

77. Plaintiff reasonably relied on SharkNinja's representations that its pressure cookers were a quick, effective and safe means of cooking

78. SharkNinja's breach of the implied warranty of fitness for a particular purpose was a direct and proximate cause of Plaintiff's injuries and damages.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

79. Plaintiff incorporates by reference each and all of the allegations contained in the preceding paragraphs as though fully set forth herein.

80. At the time SharkNinja marketed, distributed and sold its pressure cookers to Plaintiff, SharkNinja warranted that its pressure cookers were merchantable and fit for the ordinary purposes for which they were intended.

81. Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

82. SharkNinja's pressure cookers were not merchantable and fit for its ordinary purpose, because they had the propensity to lead to the serious personal injuries described herein.

83. Plaintiff purchased her pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that they were safe for its intended, foreseeable use of cooking.

84. SharkNinja's breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

## DAMAGES

85. Plaintiff incorporates by reference each and all of the allegations contained in the preceding paragraphs as though fully set forth herein.

86. As a result of the above acts and omissions of the Defendant, Plaintiff suffered injuries and damages in excess of $75,000.00 as follows:

 a. Future medical expenses;

 b. Past physical pain and suffering;

 c. Future physical pain and suffering;

 d. Past mental pain and suffering;

 e. Future mental pain and suffering;

 f. Permanent impairment;

 g. Disfigurement;

 h. Other damages to be more fully set forth after discovery is completed.

87. Plaintiff is entitled to recover pre-judgment interest in accordance with law and equity as part of their damages herein, and Plaintiff here and now sues for recovery of pre-judgment interest.

## JURY DEMAND

88. Plaintiff respectfully requests and demands a trial by jury on all claims and issues.

## REQUEST FOR PLACE OF TRIAL

89. Pursuant to NECivR 40.1(b), Plaintiff hereby requests trial of the case at Lincoln.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that upon final trial, Plaintiff recover actual, compensatory, and punitive damages, as specified above, from the Defendant; that Plaintiff recovers costs of Court herein expended; that Plaintiff recover the interest, both pre-judgment and post-judgment, to which Plaintiff is entitled under the law; and for such other and further relief, both general and special, legal and equitable, to which Plaintiff may be justly entitled.

Respectfully submitted,

*s/ Adam Milasincic*
Texas Bar No. 24079001*
Attorney for Plaintiff
**THE AMMONS LAW FIRM, LLP**
3700 Montrose Blvd.
Houston, Texas 77006
Telephone: (713) 523-1606
Fax: (713) 523-4159
E-mail: adam@ammonslaw.com

*Application for pro hac vice admission pending*